IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| DLUBAK CORPORATION, | ) | Bankruptcy Case No. 13-70582-JAD |
| | ) | |
| Debtor. | ) | Chapter 11 |
| _____ | ) | |
| | ) | Doc. No. _____ |
| DLUBAK CORPORATION, | ) | |
| | ) | Related to Doc. No. _____ |
| Movant, | ) | |
| | ) | Hearing Date: |
| v. | ) | Time: |
| | ) | |
| FIRST COMMONWEALTH BANK, | ) | |
| FARMERS & MERCHANTS BANK OF | ) | |
| WESTERN PENNSYLVANIA, N.A., THE | ) | |
| HUNTINGTON NATIONAL BANK, | ) | |
| NISSAN MOTOR ACCEPTANCE | ) | |
| CORPORATION AND WELLS FARGO | ) | |
| BANK, N.A. | ) | |
| | ) | |
| Respondents. | ) | |
| _____ | ) | |

AGREED INTERIM ORDER AUTHORIZING USE OF
CASH COLLATERAL, APPROVING TERMS OF POST-PETITION FINANCING,
AND GRANTING SENIOR LIENS AND PRIORITY ADMINISTRATIVE EXPENSE

THIS MATTER came before the Court upon the Emergency Motion for Order Pursuant

to Sections 361, 362, 363 and 364 of the Bankruptcy Code Regarding Debtor in Possession

Financing, Use of Cash Collateral and Adequate Protection ("Cash Collateral and DIP Financing

Motion") as filed by Dlubak Corporation ("Debtor") and First Commonwealth Bank ("Lender")

on August 9, 2013.

The Debtor and the Lender have negotiated in good faith and have represented to the

Court that they have agreed in good faith to the terms and conditions of this Agreed Interim

Order Authorizing Use of Cash Collateral, Approving Terms of Post Petition Financing, and Granting Senior Liens and Priority Administrative Expense (the "Order").

## STIPULATIONS OF FACT BY DEBTOR AND LENDER

The Debtor and Lender have stipulated and agreed as follows, and seek the relief requested herein to prevent immediate and irreparable harm to the Debtor's estate and to facilitate the continuation of the Debtor's business:

### STATEMENT OF JURISDICTION

1.    This Court has jurisdiction over this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. §§ 1334 and 157. Consideration of the Cash Collateral Motion constitutes a core proceeding as defined in 28 U.S.C. §§ 157(b)(2)(A), (D), (G), (K), (M), and (O). This Order is subject to, and the Lender is entitled to the benefits of, Sections 363(b) of the Bankruptcy Code.

### FACTUAL BACKGROUND

2.    The Debtor commenced its bankruptcy case (the "Case") when it filed its Voluntary Petition for reorganization under Chapter 11 of the Bankruptcy Code on August 7, 2013 (the "Petition Date"). The Debtor has continued in the management and possession of its business and property as debtor-in -possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

3.    An Official Committee of Unsecured Creditors (the "Creditors' Committee") has not yet been appointed in this Case.

4.    The Debtor is a glass manufacturer with its headquarters located in Indiana County, Pennsylvania.

**THE LENDER'S CLAIMS**

5.      Prior to the commencement of Debtor's Chapter 11 case, Lender had made loans and advances and provided other credit accommodations to the Debtor pursuant to the following agreements executed and delivered by Debtor with, to or in favor of Lender: (1) A Second Amended and Restated Loan Agreement dated December 21, 2005 (as amended by that certain Affirmation of and Amendment to Loan Documents and Allonge to Note dated July 3, 2009, as further amended by the certain Second Affirmation of and Amendment to Loan Documents, Allonge to Note and Release dated August 31, 2011 and as further amended by that certain Third Affirmation of and Amendment to Loan Documents and Waiver dated November 8, 2012 collectively the "Loan Agreement"); (2) a Second Amended and Restated Revolving Credit Note dated December 21, 2005 in the face amount of $2,500,000.00 (as amended by that certain Forbearance Agreement, First Amendment to Forbearance Agreement and Second Amendment to Forbearance Agreement and as further amended from time to time, collectively the "Line of Credit"); (3) a Term Note dated Term Note dated November 20, 2008 in the face amount of $3,300,000.00 (as amended and restated from time to time, the "$3.3MM Note"); (4) a Term Note dated February 5, 2009 in the face amount of $100,000 (as amended and restated from time to time, the "$100M Note"); and (5) a $94,000 Term Note dated December 18, 2009 in the face amount of $94,000.00 (as amended and restated from time to time, the "$94M Note" and together with the Line of Credit, $3.3MM Note and the $100M Note, as amended by that certain Forbearance Agreement effective August 6, 2013 collectively the "Loans").

6.      The Loans are secured by, *inter alia*, a Security Agreement and Collateral Assignment dated November 20, 2008 (the "Security Agreement").   To perfect the interests granted to it by the Debtor, the Lender filed financing statements (the "Financing Statements")

with the Secretary of the Department of State of the Commonwealth of Pennsylvania on November 24, 2008 at File No. 2008112502689 and the Indiana County Pennsylvania, Recorder of Deeds on November 24, 2008 at Instrument No. 2008-192647.

7.     The Loans are further secured by, inter alia, a Open-End Mortgage and Security Agreement dated November 20, 2008 (the "Mortgage") for the Debtor's real property located in Blairsville, Pennsylvania (the "Real Property") and recorded on November 24, 2008 with the with the Recorder of Deeds of Indiana County at Instrument No. 2008-192645; and an Assignment of Leases and Rents dated November 20, 2008 (the "Assignment") and recorded on November 24, 2008 with the with the Recorder of Deeds of Indiana County at Instrument No. 2008-192646.

8.     The Loan Agreement, Line of Credit, $3.3MM Note, $100M Note, $94M Note, Security Agreement, Financing Statements, Mortgage and Assignment shall be collectively referred to as the "Loan Documents".   True and correct copies of the Loan Documents are retained by the Lender and the Debtor and will be made available to interested parties upon request.

9.     As of the Petition Date, the amount due under the Loan Documents is $3,193,151.82, plus additional interest, plus any and all overdraft amounts, credit extended for any items presented to the Lender, and any and all other obligations of Debtor to Lender under the Loan Document, plus reasonable costs, plus attorneys' fees, and any and all other amounts to the extent permitted by the Bankruptcy Code (whether pre-petition or post-petition) and applicable law (the "Pre-Petition Debt").   The Pre-Petition Debt is valid, existing and legally enforceable and is secured pursuant to the Loan Documents by perfected first priority liens and security interests in and upon, *inter alia*, all of the Debtor's inventory, goods, accounts,

contracts, contract rights, instruments, inventory, general intangibles, accounts and chattel paper, deposit accounts, leases, agreements to lease, trademarks, copyrights, patents and any and all proceeds of the foregoing, subject to any valid and perfected purchase money security interest (the "Pre-Petition Collateral").  The Lender has properly perfected its first priority liens and security interests in the Pre-Petition Collateral as evidenced by the Loan Documents.

10.    Debtor is in default of its debts and obligations to the Lender under the terms and provisions of the Loan Documents. These defaults exist and are continuing.  As of the Petition Date, all of the Pre-Petition Debt was fully due and owing and the Pre-Petition Debt remains fully due and owing at this time.

11.    The Lender has enforceable perfected first priority liens and security interests in the Pre-Petition Collateral and Cash Collateral (as defined herein), plus any and all other property as provided under 11 U.S.C. § 552(b), this Order, and applicable law in the amount of the Pre-Petition Debt, without limitation (the "Lender's Interest").

12.    The Debtor has attempted to obtain DIP financing in the form of unsecured credit and credit allowable as an administrative expense, and no such credit is available to the Debtor, and secured credit is also unavailable to the Debtor on terms better than those agreed to herein by Lender.

## NEED FOR USE OF CASH COLLATERAL

13.    The Debtor has an immediate need for the use of Cash Collateral and additional advances and financial accommodations to preserve its assets, fund its business operations and to, on a limited basis, purchase inventory through September 6, 2013 and such payments and inventory purchases will serve to protect the Debtor's assets and estate and, therefore, will also serve to preserve and protect the property subject to Lender's security interest.

14.     The Debtor has requested that Lender make loans and advances and provide other credit accommodations to the Debtor and consent to the use of Cash Collateral, in order to provide funds to be used by the Debtor to make payments required to operate its business for the purchase of inventory to be sold by the Debtor in the ordinary course of business. The Debtor has no interest, directly or indirectly, in any cash which is not Cash Collateral of Lender.

15.     The Lender is willing to make such loans and advances and provide such other credit accommodations on a secured basis, and to consent to the Debtor's use of Cash Collateral, as more particularly described herein and subject to the terms and conditions contained herein.

16.     Under the circumstances, the terms and conditions contained in this Order are fair and reasonable.

17.     The ability of the Debtor to continue in business and remain a viable entity and to have any prospect to propose a plan under Chapter 11 of the Bankruptcy Code depends upon obtaining such financing from Lender.

18.     Unless the Court approves the relief requested in the Cash Collateral and DIP Financing Motion, the Debtor will be unable to pay its payroll and payroll expenses, operating expenses, and to otherwise preserve its assets, and immediate and irreparable harm to the Debtor's businesses and value of its estate will occur.

NOW, THEREFORE, upon the Cash Collateral and DIP Financing Motion, the foregoing stipulations of the Debtor and the Lender, the files and pleadings in this case, the record of the proceedings heretofore had before this Court with respect to the Cash Collateral and DIP Financing Motion and upon completion of such hearing and after due deliberation and sufficient cause appearing therefor, the Court finds as follows:

A.     The Debtor is unable to obtain unsecured credit allowable only under Section 503(b)(1) of the Bankruptcy Code, or pursuant to Section 364(a) and (b) of the Bankruptcy Code.

B.     The Cash Collateral and DIP Financing Motion was filed on August 8, 2013 and the Lender has provided actual notice of the Cash Collateral and DIP Financing Motion and the relief requested thereunder to (i) the Office of the United States Trustee, (ii) all known creditors who may have liens against the Debtor's assets, (iii) the twenty (20) largest unsecured creditors of Debtor; and (iv) all parties in interest that have filed a Notice of Appearance on or before August 9, 2013, all as more fully described in the Certificate of Service filed by counsel for the Lender.  The expedited notice of the Cash Collateral and DIP Financing Motion pursuant to Bankruptcy Rule 4001(c) was provided to said parties in interest was necessary to avoid immediate and irreparable harm to the Debtor's estate pending a final hearing for permanent financing.  Sufficient and adequate notice of the Cash Collateral and DIP Financing Motion and the hearing with respect thereto has been given pursuant to Bankruptcy Rules 2002, 4001(c) and (d) and 9014 and Section 102(l) of the Bankruptcy Code as required by Sections 364(c) and (d) of the Bankruptcy Code and no further notice of, or hearing on, the relief sought in the Cash Collateral and DIP Financing Motion is necessary or required.

C.     Consideration of the Cash Collateral and DIP Financing Motion constitutes a "core proceeding" as defined in 28 U.S.C. §§ 157(b)(2)(A), (D), (G), (K), (M) and (O).  This Order is subject to, and Lender is entitled to the benefits of, the provisions of Sections 363(m) and 364(e) of the Bankruptcy Code.  This Court has jurisdiction over this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334.

D.      The Debtor and the Lender have represented to the Court that they have agreed in good faith to the terms and conditions of this Order. The financing arrangements between the Debtor and Lender, pursuant to which post-petition loans, advances and other credit accommodations may be made or provided to the Debtor by Lender, have been and are being entered into by Lender and the Debtor in good faith as required by Section 364(e) of the Bankruptcy Code and are in the best interests of the Debtor, its estate and creditors.

E.      Good, adequate and sufficient cause has been shown to justify the granting of the relief requested herein.

IT IS HEREBY ON THIS ____ DAY OF _____, 2013, ORDERED, ADJUDGED AND DECREED THAT:

1.      The Cash Collateral Motion and Financing Motion are **<u>Granted</u>** subject to the terms and conditions hereinafter set forth.

## SEGREGATION AND ACCOUNTING OF CASH COLLATERAL

2.      To the extent of Lender's Interest as permitted by this Cash Collateral Order and the Bankruptcy Code, all cash equivalents, whether in the form of cash, negotiable instruments, documents of title, securities, deposit accounts, or in any other form, which represent income, proceeds, products, rents or profits of the Pre-Petition Collateral that are now in the Debtor's (or persons in privity with the Debtor) possession, custody or control, or in which the Debtor will obtain an interest during the pendency of this bankruptcy Case (the "Cash Collateral"), are to be treated as the Cash Collateral of the Lender.   The Debtor has no interest, directly or indirectly, in any cash which is not Cash Collateral of Lender. The Lender has first priority perfected liens and security interests in the Cash Collateral pursuant to the applicable provisions of the Loan Documents, Sections 363(a) and 552(b) of the Bankruptcy Code and this Order.

3.     The Debtor shall segregate and account to Lender for all Cash Collateral which it now possesses, which it has permitted to be transferred into the possession of others, if any, which is being held by those in privity with it, or which it might hereafter obtain. All of the Cash Collateral collected by the Debtor or its agents is the Cash Collateral of the Lender.

## USE OF CASH COLLATERAL

4.     The Debtor is hereby authorized, pursuant to Section 363(c)(2) of the Bankruptcy Code, to use Cash Collateral. The Debtor is strictly prohibited from using the Cash Collateral except as provided herein. Unless already done, the Debtor shall account to the Lender for the receipt and use, if any, of the Cash Collateral received by the Debtor since the Petition Date and prior to the entry of this Order.

5.     The Lender does not consent to the Debtor's use of Cash Collateral except in accordance with the terms and conditions contained in this Order.

6.     The Cash Collateral shall be used to pay the various operating expenses as set forth in **Exhibit "A"** attached hereto, setting forth the Debtor's business plan for the period commencing as of the Petition Date and ending September 6, 2013 (the "Budget"). On or before September 5, 2013, the Debtor shall submit a monthly budget to the Lender and the U.S. Trustee for the period of the month of October 2013.  On Wednesday of each week, the Debtor shall submit to the Lender and the United States Trustee its actual operating report for the immediately preceding week, with comparison to the Budget.  The Debtor shall also no less that ten (10) days prior to the end of each month thereafter, submit to Lender and the United States Trustee, its actual operating report for the prior month and its projected operating budget for the subsequent month.  Such budgets shall be in substantially the form of Exhibit "A".  The Debtor shall be authorized to use the proceeds of the Post-Petition Debt or the Pre-Petition Collateral only for

payment of such categories of expenses as are set forth in the monthly budgets proposed by the Debtor.  Payment by the Debtor of expenses in excess of five percent (5%) per line item as set forth on the submitted budget plus such amounts as are authorized for payment by order of this Court ("Excess Payment"), shall constitute a basis for Lender, at its option, to seek to obtain the lifting of the automatic stay after notice to the Debtor, unless Lender consents to such expenditures in writing.  The Court shall hear such a motion on an expedited basis.  Failure by the Debtor to comply with the covenants in the Loan Documents (except as modified or waived pursuant to this Order) shall constitute a basis for Lender, at its option, to seek on an expedited basis to obtain the lifting of the automatic stay after notice to the Debtor and United States Trustee.  Debtor is hereby required to deliver to Lender and the United States Trustee such other financial and other information concerning the business and affairs of the Debtor as Lender, or the United States Trustee, shall reasonably request from time to time.  Debtor shall also provide in form and substance satisfactory to Lender a monthly financial statement as of the previous month on the fifteenth (15th) day of each following month and any DIP reports filed with the Court.  Debtor shall further provide Lender and United States Trustee with daily information as to the extent and composition of the Pre-Petition Collateral and Post-Petition Collateral and as to any collections thereon.

In (i) accepting the Budget, covenants and statements of Debtor herein, (ii) funding Post-Petition Debt, or (iii) taking any action directed by this Order, Lender shall not have liability to any third party and shall not be deemed to be in control of the operations of the Debtor or to be acting as a "responsible person" with respect to the operations or management of the Debtor. Copies of all documents that the Debtor furnishes Lender hereunder shall also be timely provided by the Debtor to the United States Trustee.

If Debtor shall be in default under any provision of this Order, the Lender may file a Notice of Default (the "Default Notice") with the Court which shall be served by facsimile upon the Debtor, the U.S. Trustee, and secured creditors, and Debtor shall have the right to cure the default as set forth in said Notice, as follows:

(A) Debtor shall 48 hours after the filing of the Default Notice to provide to Lender, any report required by this Order, or any Excess Payment which is out of formula, or other evidence of the cure of other default(s), with the Debtor to provide a copy thereof to the Court and U.S. Trustee.

If Debtor fails to cure the defaults specified in the Default Notice, Lender shall immediately have the right to stop advancing the Debtor funds under the terms of this Order and the Loan Documents and shall also have the right to ask the Court for an expedited hearing to lift the automatic stay.

## CASH COLLATERAL ACCOUNT

7.    Unless paid directly to the Lender by account debtors of the Debtor, the Debtor shall immediately segregate, remit and deposit all of the Cash Collateral in the Debtor's collection account, and all cash and Cash Collateral in Debtor's possession, custody or control and which the Debtor may receive in the future, with the Lender in an account (or accounts as directed by the Lender) at the Lender in the name of the Debtor and over which the Lender shall have full dominion and control through the Lender (restyled as a "debtor-in-possession" account or accounts, as the case may be) pursuant to terms and provisions acceptable to the Lender (individually and/or collectively, the "Cash Collateral Account").   Any other receipts by the Debtor from Collateral shall be deposited directly into the Cash Collateral Account. The Debtor shall be and is prohibited from withdrawing funds from the Cash Collateral Account.   In the

event the receipts are from proceeds of assets in which either Farmers & Merchants Bank of

Western Pennsylvania, N.A., The Huntington National Bank, Nissan Motor Acceptance

Corporation and Wells Fargo Bank, N. A. has a validly perfected first priority lien and security

interest, such receipts shall be deposited into a separate and segregated debtor-in-possession

account.   The Cash Collateral Account shall be maintained for the purpose of complying with

this Order, and shall be separate from any other accounts of the Debtor which may be established

as "debtor-in-possession" accounts. The Debtor shall comply with all rules and regulations of the

Office of the United States Trustee in connection with the accounts referenced above.

## POST-PETITION FINANCING

8.    Pursuant to Sections 364(c) and 364(d) of the Bankruptcy Code and the terms of

this Order, Debtor is hereby authorized and empowered to borrow from Lender, and Lender shall

make available to the Debtor pursuant to the terms of this Order, upon the terms and conditions

set forth in the Loan Documents and this Order on a revolving basis, or obtain such other credit

accommodations as may be made available to Debtor by Lender, at this time or any other time,

in an amount equal to the Borrowing Base plus $400,000.00 (the "Post-Petition Debt").   The

"Borrowing Base" shall be equal to 85% of eligible accounts receivable less than 90 days from

the invoice date plus up to 50% of eligible inventory with inventory availability capped at

$750,000.00.  As of the date of this Order, the Debtor has represented that the Debtor's eligible

accounts receivable equals approximately $830,210.46 as of the Petition Date.    All such

advances or financial accommodations shall accrue interest at the Prime Rate (as defined in the

Loan Documents) plus 5.0% pursuant to the terms of the Loan Documents.   In addition to said

Post-Petition Debt,  pursuant to the terms of the Loan Documents and this Order, Lender shall

make available to the Debtor all financing accommodations set forth in the Loan Documents on a

revolving basis, if the Debtor is not in default of its obligations under this Order and the Loan Documents (as modified pursuant to this Order) provided, that Lender shall not be required to make financing accommodations available to the Debtor with respect to any part of the Pre-Petition Debt that is subject to an action or proceeding to contest the validity, amount, or priority thereof, provided further, that any payments required under this Order with respect to the Pre-Petition Debt shall continue until such action or proceeding has been resolved pursuant to an Order of this Court or applicable appellate court.  With the exception of any pre-petition default arising out of any misrepresentation (including any material misstatement or material omission) to the Bank with respect to the Debtor's financial condition, all defaults occurring or existing on or prior to the date hereof whether under the Loan Documents or otherwise, as of the Petition Date, shall be deemed waived by Lenders with respect to funding of the Post-Petition Debt only. Provided, however, the waiver of such defaults shall not be deemed to be a waiver of any rights against third parties that the Lenders may have by virtue of action or inaction related to any pre-petition default.

9.    The Debtor is authorized to execute and deliver to the Lender an affirmation and/or amendment to the Lien of Credit to reflect the increase of the Borrowing Base to the extent necessary.

### NEW AND REPLACEMENT LIENS FOR POST-PETITION FINANCING AND ADEQUATE PROTECTION OF PRE-PETITION DEBT

10.    Liens and Security Interests to Lenders.

A.    *Liens and Security Interest to Secure Pre-Petition and Post-Petition Debt.* As security for the payment and performance of the Pre-Petition Debt and the Post-Petition Debt, Lender shall have and is hereby granted, effective from the Petition Date, first valid perfected and paramount security interests and liens, subject to any valid and perfected purchase money

security interest, in and upon (i) the Pre-Petition Collateral, and (ii) goods, inventory and/or other personal property, and the proceeds thereof, which the Debtor is authorized to purchase pursuant to the terms of this Order or which constitute products, proceeds, replacements or substitutions of the Pre-Petition Collateral.

        B.     *Liens and Interests to Secure Post-Petition Debt*.  As additional security for the payment and performance of the  Post-Petition Debt, to the extent that actual advances are made, Lender shall have and is hereby granted, effective from the Petition Date, first valid perfected and paramount security interests and liens, in and upon (i) all of the Debtor's assets, including, by way of example and not limitation, the Debtor's right, title and interests in and to any contract, contract right, account, general intangible, leasehold interest, tax refund, insurance proceed, insurance premium refund, refund of retainers paid to professionals, security deposit, utility deposit, bond and proceeds of same, cash, cash equivalent and customer lists, goods, equipment, fixtures and furniture whether acquired before or after the Petition Date, and the net proceeds thereof, and (ii) all pre-petition and post-petition accounts evidenced by instruments or notes. (The assets set forth in Paragraph 9A and 9B, hereinafter the "Collateral"). Provided, however, with respect to the equipment, furniture and fixtures which may be subject to existing perfected liens or security interests in favor of Farmers & Merchants Bank of Western Pennsylvania, N.A., The Huntington National Bank, Nissan Motor Acceptance Corporation and Wells Fargo Bank, N. A., the lien in favor of Lender granted hereunder shall be considered to be granted in order of and subject to the existing lien priorities. To the extent that any applicable non-bankruptcy law otherwise would restrict the granting, scope, enforceability, attachment, or perfection of the liens and security interests authorized or created by this paragraph, or otherwise would impose filing or registration requirements with respect to such replacement liens, such law

hereby is preempted to the maximum extent permitted by the Bankruptcy Code, otherwise applicable federal law, and the judicial power of this Bankruptcy Court.

11.     Pursuant to Sections 361 and 363(e) of the Bankruptcy Code, as adequate protection for the use of the Cash Collateral by the Debtor authorized herein, Lender is hereby granted on a dollar for dollar basis, to the extent that Cash Collateral is used by the Debtor and there is a decline in the value of the Pre-Petition Collateral, a first priority security interest and lien (the "Replacement Lien") on the Collateral.

12.     This Order shall be sufficient and conclusive evidence of the priority and validity of the security interests in and liens upon the property of the Debtor's estate (including the Replacement Lien) granted to Lender as set forth herein, without the necessity of filing, recording or serving any financing statements or other documents which may otherwise be required under federal or state law in any jurisdiction or the taking of any other action to validate or perfect the security interests and liens granted to Lender in this Order and the Loan Documents.  If Lender shall, in its discretion, elect for any reason to file any such financing statements or other documents with respect to such security interests and liens, the Debtor is authorized and directed to execute, or cause to be executed, all such financing statements or other documents upon Lender's reasonable request and the filing, recording or service thereof (as the case may be) of such financing statements or similar documents shall be deemed to have been made at the time and on the Petition Date.  Lender may, in its discretion, file a certified copy of this Order in any filing or recording office in any county or other jurisdiction in which the Debtor has real or personal property and, in such event, the subject filing or recording officer is authorized and directed to file or record such certified copy of this Order.

13.     Entitlement to Administrative Priority Claim Status.

A.     *Post-Petition Debt*.  As further security for the Post-Petition debt to the extent advances are made and the liens granted hereunder are inadequate, the Lender shall be entitled to an administrative priority claim under Section 507(b) of the Bankruptcy Code over all other expenses of administration in these cases of the kind specified in Sections 105, 326, 330, 331, 503(b), 506(c), 507(b) or 726 of the Bankruptcy Code.

B.     *Pre-Petition Debt*.  With respect to the Debtor's use of Cash Collateral, the Lender shall be entitled to seek an administrative priority claim under Section 507(b) of the Bankruptcy Code over all other expenses of administration in these cases of the kind specified in Sections 105, 326, 330, 331, 503(b), 506(c), 507(b) or 726 of the Bankruptcy Code, to the extent, if any, that the Replacement Lien is inadequate, subjection to objection by creditors and parties in interest.

14.     No action or inaction by the Lender in (i) accepting the Budget, covenants and statements of Debtor herein, (ii) funding Post-Petition Debt, or (iii) taking any action directed by this Order shall be used, construed, or deemed to hold the Lender to be in control of the Debtor's estate, or the governance, management or operations of the Debtor's estate for any purpose, without limitation, or to be participating in the management of the Debtor or acting as a "responsible person" or "owner or operator" or a person in "control" with respect to the governance, management or operation of the Debtor's estate or its business (as such terms, or any similar terms, are used in the Bankruptcy Code, or the Internal Revenue Code, Comprehensive Environmental Response, Compensation and Liability Act, each as may be amended from time to time, or any other federal or state statute, at law, in equity, or otherwise) by virtue of the interests, rights, and remedies granted to or conferred upon the Lender under this

Order including, without limitation, such rights and remedies as may be exercisable by the Lender in connection with this Order.

15.    On or before August 9, 2013, the Debtor shall file a Motion seeking to establish sale and bid procedures for the sale(s) of substantially all of the Debtor's assets, which Motion shall be in form and substance satisfactory to the Lender.

16.    The Automatic Stay is hereby vacated and modified to the extent necessary to permit (i) the Lender to commit all acts and take all actions necessary to implement this Order, and (ii) all acts, actions, and transfers contemplated herein including, without limitation, indefeasible transfers of Cash Collateral and other funds to the Lender and the application by the Lender of same against the Pre-Petition Debt and/or Post Petition Debt as determined by the Lender in its sole and absolute discretion.

17.    In accordance with Section 364(c) of the Bankruptcy Code, the Debtor's obligations with respect to the Post-Petition Debt and the Pre-Petition Debt shall have priority in right of payment over any and all other expenses of administration of these cases specified in Sections 105, 326, 330, 331, 503(b), 506(c), 507(b) or 726 of the Bankruptcy Code except any unpaid and undisputed quarterly U.S. trustee fee. The Court reserves the right, upon the objection of any interested party, to hear and determine the proper application of payments from proceeds of Cash Collateral to the Pre-Petition Debt.

18.    Except as otherwise set forth herein, the loans and advances made, and other credit accommodations provided, by Lender to the Debtor, may only be used by the Debtor for the payment of any quarterly fees due to the U.S. Trustee, employee salaries, collection of accounts, and other general operating and working capital purposes in the ordinary course of Debtor's business, and in amounts not exceeding the amounts set forth in the Budgets.

19.     The Debtor shall reaffirm all of the terms and conditions of the Loan Documents, except as specifically modified by this Order, and agrees to be bound thereby.  The terms and conditions of the Loan Documents, except as specifically modified by this Order as so reaffirmed, assumed and adopted shall be construed and considered as agreements between the Debtor and Lender for all purposes in connection with the post-petition loans, advances or other credit accommodations made or provided to the Debtor by Lender.  The Debtor shall comply with each of the covenants (the "Covenants") set forth in the Loan Documents, except to the extent such Covenants are modified or contradicted by the terms of this Order. The Debtor and the Lender shall enter into an Amendment to the Loan Documents consistent with the terms of this Order within five (5) business days after entry of this Order.

20.     The Debtor is authorized and directed, without further order of this Court, to permit Lender to monitor its Collateral, and shall reimburse Lender for its reasonable expenses incurred in connection therewith.

21.     The Debtor shall continue to maintain, with financially sound and reputable insurance companies, insurance of the kind, covering the Collateral and in the amount at least of the aggregate amount of the Pre-Petition Debt and Post-Petition Debt (covering such risks in amounts as shall be satisfactory to the Lender and shall name the Lender as loss payee thereunder), including without limitation insurance covering the Collateral and all post-petition assets, and such other collateral of the Lender, if any, as the Lender may from time to time reasonably request, and, at the Lender's request, deliver to the Lender evidence of the maintenance of such insurance.

22.     The Debtor shall make any and all payments necessary to keep the Collateral and the post-petition assets, and its other property, in good repair and condition and not permit or

commit any waste thereof. The Debtor shall maintain all of the Collateral and other property in good condition and repair, not commit any waste thereof and make all necessary replacements thereof, and operate the same properly and efficiently. The Debtor shall preserve and maintain all patents, licenses, privileges, franchises, certificates and the like necessary for the operation of its businesses.

23.    The Debtor verifies to the best of its knowledge and belief that all payments to all taxing authorities are current, with the exception of the real estate taxing authorities.   Upon request, the Debtor shall provide Lender with the status of all negotiations regarding taxing authorities.

24.    To the extent the Debtor has made or makes any deposits for the benefit of utility companies or any other entity, such deposits shall be, and hereby are, subject to first priority perfected liens and security interests of the Lender granted by the Loan Documents, and this Order, the Debtor may not use or transfer such deposits, and the Debtor assigns and sets over all such deposits to the Lender and any utility company or any other entity holding such deposits shall immediately turn over such deposit to Lender upon the occurrence of an Event of Default and the presentation by the Lender to such utility company or any other entity of a certified copy of this Cash Collateral Order and a notice of such Event of Default, subject to any valid and enforceable setoff rights under Section 553 of the Bankruptcy Code, and applicable law.

### PROFESSIONAL FEES/ADMINISTRATION

25.    Lender will allow the Debtor's professionals (i.e., Debtor's bankruptcy counsel) (the "Debtor's Professionals") to be paid their fees and expenses out of the Lender's Cash Collateral, subject to Bankruptcy Court approval, as follows:

(a)    On the Petition Date, the amount of $20,000.00 has been funded for the retainer for Debtor's counsel (the "Retainer"); and

(b)    Monthly fees and expenses, subject to Bankruptcy Court approval following a hearing on at least twenty (20) days' notice to the Lender, the U.S. Trustee and other parties in interest entitled to notice, unless an interim fee procedure shall be approved by the Court, in which case said procedure shall govern.

26.    No Cash Collateral shall be used for the payment or reimbursement of any fees or disbursements of any of the Debtor's Professionals incurred in connection with the assertion or joinder in, or review or analysis of, any claim, counter-claim, action, proceeding, application, motion, objection, defense or other contested matter, the purpose of which is to seek any order, judgment, determination or similar relief: (i) invalidating, setting aside, avoiding, subordinating in whole or in part the Pre-Petition Debt, the Post-Petition Debt, or the Lender's liens and security interests provided by the Loan Documents, or this Order; or (ii) preventing, hindering, or delaying, whether directly or indirectly, the Lender's, assertion, enforcement, or realization upon any Collateral, including the Pre-Petition Collateral or Cash Collateral. Moreover, except as set forth above, no costs or expenses of administration that have been or may be incurred in this case, or in any proceeding related hereto, and no pre-petition priority claims are or will be prior to or on a parity with secured claims of the Lender against the Debtor and its estate arising out of the Loan Documents, and this Order. No payments to Professionals shall be made without prior Bankruptcy Court approval.

## MISCELLANEOUS PROVISIONS

27.    The Debtor agrees to not assert any counterclaim, set off or defense of any kind or nature which would in any way affect the validity, enforceability and non-voidability of the Pre-

Petition Debt and the security interests and liens in the Pre-Petition Collateral or reduce or affect the obligation of the Debtor to pay the Pre-Petition Debt and agree to support Lender in any dispute raised in these bankruptcy proceedings to either the amount of Lender's claim or the validity, enforceability and non-voidability of its liens and security interests in the Pre-Petition Collateral. The Debtor further agrees that, in consideration for Lender's performance hereunder, the Debtor shall not seek to impose upon the Lender or the Collateral the surcharge provisions of Section 506(c) of the Bankruptcy Code and the enhancement of collateral provisions of Section 552 of the Bankruptcy Code, and that no obligations incurred or payments or other transfers made by or on behalf of the Debtor on account of the financing arrangements with the Lender shall be avoidable or recoverable from the Lender under Sections 547, 548, 550, or 553 or any other provision of the Bankruptcy Code, federal law, state law, or any other applicable law.

28.     The Debtor's authority to use cash collateral and to obtain post-petition financing shall terminate on the earlier of (a) the failure of Debtor to perform any of its obligations under this Order or the Loan Documents, as amended to conform to this Order, which are not timely cured, (b) conversion of the Chapter 11 case of Debtor to a case under Chapter 7 of the Bankruptcy Code, (c) Confirmation of a Plan of Reorganization, (d) payment of Lender's Indebtedness, including all Pre-Petition and Post-Petition Debt, (e) appointment of a trustee or examiner pursuant to § 1104 of the Code, or (f) unless extended in writing by mutual agreement of the Lender and Debtor, the date of the Final Hearing on the Cash Collateral Motion and Financing Motion (without prejudice to the Debtor's rights to seek an extension thereof).

29.     Lender shall be entitled to the full protection of Section 364(e) of the Bankruptcy Code with respect to debts, obligations, liens, security interests and other rights created or

authorized in this Order in the event that this Order or any authorization contained herein is vacated, reversed or modified on appeal or otherwise by any court of competent jurisdiction.

30.     The provisions of this Order and any actions taken pursuant hereto shall survive entry of any order which may be entered converting Debtor's Chapter 11 case to a Chapter 7 case or any order which may be entered confirming or consummating any plan(s) of reorganization of the Debtor, and the terms and provisions of this Order as well as the priorities in payment, liens, and security interests granted pursuant to this Order and the Loan Documents shall continue in these or any superseding cases under the Bankruptcy Code, and such priorities in payment, liens and security interests shall maintain their priority as provided by this order until all Indebtedness is indefeasibly satisfied and discharged.  The provisions of this Order shall be binding upon any Examiner or Responsible Officer appointed under Chapter 11 of the Bankruptcy Code or Trustee appointed in either a case under Chapter 11 or Chapter 7 of the Bankruptcy Code.

31.     To the extent the terms and conditions of the Loan Documents are in conflict with the terms and conditions of this order, the terms and conditions of this Order shall control.

32.     The Debtor is authorized to take such actions and execute such documents as may be necessary to carry out the terms and conditions of the transactions approved by this Order. The Debtor shall deliver all notes, instruments and documents of title to the Lender within two (2) business days after entry of this Order.

33.     Nothing contained in this Order shall be deemed a finding with respect to adequate protection of the interests of Lender and each party hereto reserves the right to claim that the protection provided in this Order is or is not "adequate protection" for the purposes of section 507(b) of the Bankruptcy Code or otherwise.

34.     Subject to notice to the Debtor and an opportunity to object, the Debtor shall pay, upon receipt of invoices therefor, all of the reasonable costs and expenses.

35.      The Debtor shall reimburse the Lender for all of Lender's reasonable professional fees of financial advisors incurred by Lender in connection with the negotiation, preparation and administration of this Order and the administration of the Loan Documents (including all fees required thereunder) and the monitoring and the collection of the Pre-Petition and Post-Petition Debt and the enforcement of the Bank's rights and remedies under the Loan Agreements and this Order (the "Professional Services"), as follows:  The Lender will file with the Court, and serve upon the Debtor and U.S. Trustee, invoices for the Professional Services to be reimbursed.  If within twenty (20) days from the Lender's filing of any Professional Fees Invoice, no Objection has been (i) filed by the Debtor or the U.S. Trustee, or (ii) raised by the Court, then Lender is hereby authorized to debit the Cash Collateral Account to pay any of the Professional Services. The Court shall promptly schedule a hearing on any Objection to any Professional Fee Invoice.

36.     This Order has been negotiated in good faith between the Debtor and Lender.

37.     If an order is entered, whether sua sponte by the Court or otherwise, dismissing or converting the Debtor's Case, such order shall recognize that such dismissal or conversion shall not affect or diminish the Lender's rights, priorities, or remedies hereunder.

38.     If any or all of the provisions of this Order are hereafter modified, vacated, or stayed, such modification (which shall not occur without the prior written agreement of the Lender), vacation, or stay shall not affect (a) the validity of any obligation, indebtedness, or liability incurred by the Debtor to the Lender before the effective date of such modification, vacation, or stay, or (b) the validity or enforceability of any security interest, lien, priority, or other protection authorized or created hereby. Notwithstanding any such modification, vacation,

or stay, any indebtedness, obligations, or liabilities incurred by the Debtor to the Lender before the effective date of such modification, vacation, or stay shall be governed in all respects by the original provisions of this Order, and the Lender shall be entitled to all the rights, remedies, privileges, and benefits granted herein with respect to all such indebtedness, obligations, or liabilities.

39.     The provisions of this Order shall remain in full force and effect unless modified or vacated by order of the Court.  If any or all of the provisions of this Order are hereafter modified, vacated, or stayed by order of this or any other Court, such stay, modification, or vacation shall not affect in and of itself the validity and enforceability of any lien, or any prior application of payment authorized hereby with respect to the Pre-Petition Debt or Post-Petition Debt.  During the term of this Order, notice of any motion or application with respect to the subject matter hereof shall be sufficient if given by hand delivery, facsimile or overnight mail service to the Debtor, Lender, their respective counsel, counsel for the Creditors' Committee, and the United States Trustee, not less than three business days (or such shorter period as is expressly provided herein) before such motion or application is filed in the Court.

40.     Nothing contained herein shall be deemed in any manner to be a modification, release, waiver or reduction of any guaranty executed by any guarantor of the Debt or any portion thereof, all of which remain in full force and effect.

41.     This Order cannot be amended or modified except by a writing executed by all parties hereto and approved by the Court.

42.     This Order shall immediately be served by the Debtor, by hand delivery, overnight mail or facsimile, upon (i) the Office of the United States Trustee, (ii) all known creditors who may have liens against the Debtor's assets, (iii) the twenty (20) largest unsecured

creditors of Debtor, (iv) Lender and counsel for Lender, (v) all secured and priority tax claimants, and (vi) all parties in interest that have filed a Notice of Appearance.

43.     A hearing on continuation of the relief granted in this Interim Order shall be held on _____ at _____ at the United States Bankruptcy Court, Courtroom ___, 54th Floor, USX Tower, 600 Grant Street, Pittsburgh,  Pennsylvania 15219.

Any Objections must be filed and served by _____, with a courtesy copy delivered to chambers, with service to be made upon the Debtor's counsel, Lender's counsel and the Office of the U.S. Trustee.  At the _____ hearing, the Court will set a date for the Final Hearing on the Cash Collateral Motion and Financing Motion.

_____
JEFFERY A. DELLER
UNITED STATES BANKRUPTCY JUDGE

Agreed to:

COUNSEL FOR THE DEBTOR AND
DEBTOR-IN-POSSESSION, DLUBAK
CORPORATION.:

COUNSEL FOR FIRST
COMMONWEALTH BANK:

TUCKER ARENSBERG, P.C.

/s/ *Steven Shreve*_____
Steven Shreve, Esq.
Pa. Id. 5982
546 California Avenue
Avalon, Pennsylvania 15202
(412) 761-6110
Fax: (412) 761-9236

/s/  Brett A. Solomon_____
Brett A. Solomon, Esquire
Pa.Id. 34545
Jillian Nolan Snider, Esquire
Pa. Id. 202253
1500 One PPG Place
Pittsburgh, PA  15222
(412) 566-1212
Fax: (412) 594-5619