# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE:<br><br>DLUBAK CORP.,<br><br>　　　　Debtor. | Bankruptcy No. 13-70582-JAD<br><br>Chapter 11 |
| DLUBAK CORP.,<br><br>　　　　Movant,<br><br>v.<br><br>FIRST COMMONWEALTH BANK; FARMERS & MERCHANTS BANK OF WESTERN PENNSYLVANIA; THE HUNTINGTON NATIONAL BANK; WELLS FARGO BANK, N.A.; NISSAN MOTOR ACCEPTANCE CORP.; RYDER TRANSPORTATION SERVICES; MOTOR TRUCK PACLEASE; OFFICE OF THE UNITED STATES TRUSTEE;<br><br>　　　　Respondents. | Related to Doc. No. _____<br><br>**Hearing Date:**<br>**Hearing Time:**<br><br>**Response Date:** |

**ORDER APPROVING (A) BIDDING PROCEDURES FOR THE SALE OF ASSETS OF THE DEBTOR; (B) BREAK-UP FEE RELATED TO THE SALE; (C) ASSUMPTION AND ASIGNMENT PROCEDURES; AND (D) FORM AND MANNER OF SALE NOTICE**

Upon consideration of the Debtor's Expedited Motion for an Order Approving (A) Bidding Procedures For the Sale of Assets of the Debtor, (B) Stalking-Horse Bidder Fee Related to the Sale, (C) Assumption and Assignment Procedures, and (D) Form and Manner of Sale Notice (the "Motion"), and after notice, argument and hearing, and:

It appearing that on or about August 8, 2013 the Debtor entered into an Asset Purchase Agreement (the "APA") with Grey Mountain Partners, LLC ("Buyer" or "Stalking Horse

Bidder"), a Delaware limited liability company, wherein the Debtor proposes to sell substantially all of its non-real estate Assets, as defined in the APA (the "Assets");

It appearing that, as a result of the Buyer's offer to purchase the Assets, that competitive bidding may occur at the time of the Auction[1] and Sale Hearing;

It appearing that the bidding procedures (the "Bidding Procedures") proposed by the Debtor in the Motion will promote competitive bidding and the best value being obtained for the Assets;

It appearing that the break-up fee (the "Stalking-Horse Bidder Fee") in the amount of $200,000 to reimburse the Buyer for its actual expenditures of time, fees, costs and expenses, as well as the time, effort and risk it incurred, in connection with the proposed sale, and Buyer's serving as the stalking horse bidder will provide a material benefit to the Debtor's estate by increasing the likelihood that the best possible price for the Assets will be obtained and is necessary to preserve the value of the Debtor's assets.  Buyer's bid will serve as a minimum floor bid on which the Debtor, its creditors and other bidders may rely;

It appearing that the Debtor has designated Buyer as a Qualified Bidder;

It appearing that: (a) the Debtor has effectuated proper service of the Motion and that such notice of the Motion is sufficient under the circumstances and applicable Federal Rules of Bankruptcy Procedures and Local Rules of Bankruptcy Procedures; (b) reasonable opportunity to object and to be heard regarding the relief requested in the Motion has been afforded to parties in interest, and other entities; (c) the Court has jurisdiction to consider the relief requested in the Motion pursuant to 28 U.S.C. § 157 and 1334; and (d) it appearing that the relief requested in the Motion is in the best interest of the Debtor and its creditors; and

---

[1] All terms not defined herein shall have the meaning set forth in the Motion.

It is hereby ORDERED, ADJUDGED AND DECREED that the Bidding Procedures are hereby approved as follows:

**Participation Requirements:**

(a) In order to be qualified to receive any confidential information from the Debtor, to submit an Initial Overbid (defined below) and to participate in the Auction (defined below), a potential bidder must submit each of the following to the Debtor on a timely basis:

(i) An executed confidentiality agreement which shall inure to the benefit of the Successful Bidder, in a form and substance acceptable to the Debtor and the Stalking Horse Bidder; and

(ii) Current audited financial statements and latest unaudited financial statements of the potential bidder or, if the potential bidder is an entity formed for the purpose of acquiring the Assets, current audited financial statements and latest unaudited financial statements of the equity holders or sponsors of the potential bidder who will guarantee the obligations of the potential bidder, or such other form of financial disclosure and/or credit-quality support or enhancement, if any, that will allow the Debtor to make a reasonable determination as to the potential bidder's financial and other capabilities to consummate the Sale.

(b) Based on the materials received by it, the Debtor shall determine whether any potential bidder that has timely submitted the materials referred to above qualifies to submit a bid (such qualifying potential bidder, an "Overbidder").

**Bid Requirements:**

(a) To participate at the Auction, an Overbidder must submit the following to the Debtor before the Bid Deadline (as defined below):

(i) a proposed asset purchase agreement (the "Competing APA"), executed by the Overbidder, that: (a) contains terms and conditions that are substantially the same as those in the APA, along with a redlined, marked copy showing all changes between the Competing APA and the APA; (b) provides for a purchase price to be paid to the Debtor that exceeds the sum of the Purchase Price by at least the amount of the Stalking-Horse Bidder Fee plus One-Hundred Thousand Dollars ($100,000) (such aggregate amount of the Purchase Price, the Stalking-Horse Bidder Fee and One-Hundred Thousand Dollars — *i.e.*, $2.3 million — the "Minimum Overbid"); (c) remains irrevocable until the earlier of the Closing or fifteen (15) days after entry of the Sale Order; (d) disclaims any right of Overbidder to receive a fee analogous to the Stalking-Horse Bidder Fee, any transaction or breakup fee, expense reimbursement or similar fee or payment or to compensation under Bankruptcy Code Section 503(b) for making a substantial contribution; (e) is not subject to or contingent upon the obtaining of

financing; and (f) contains a proposed closing date that is not later than September 6, 2013 (the "Outside Date");

    (ii) wire transfer (to an escrow agent designated by the Debtor) or cashier's check made payable to the order of the Debtor in the amount of $100,000 (the "Overbidder's Deposit"), which will be retained by the Debtor as a nonrefundable good faith deposit for application against the purchase price at the closing of the transaction or returned to the Overbidder or otherwise applied as set forth in these Bidding Procedures;

    (iii) admissible evidence in the form of affidavits or declarations establishing that the Overbidder has the financial ability to pay the purchase price set forth in the Competing APA; and

    (iv) admissible evidence in the form of affidavits or declarations establishing the Overbidder's good faith, within the meaning of Section 363(m) of the Bankruptcy Code.

  (b) A bid received from an Overbidder (and any bid submitted at the Auction by an Overbidder) that meets the requirements set forth above will be considered a "Qualified Bid" if, in the good faith opinion of the Debtor, (i) such bid is determined not to be materially more burdensome or conditional than the terms of the APA and (ii) the Debtor reasonably believes that such bid would be consummated before the Outside Date if selected as a Successful Bid (as defined below).

  (c) Each bidder shall be deemed to acknowledge and represent that it has had an opportunity to conduct any and all due diligence regarding the Debtor and the Assets prior to making any bids; that it has relied solely upon its own independent review, investigation and/or inspection of the Assets in making its bid; and that it did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Debtor and the Assets, or the completeness of any information provided in connection therewith, except as expressly stated in these Bidding Procedures or, as to the Successful Bidder, the Competing APA with such Successful Bidder.

  (d) Any entity that submits a Qualified Bid accompanied by all items required to be submitted along therewith in accordance with these Bidding Procedures shall each be deemed a "Qualified Overbidder" and may bid for the Assets at the Auction (defined below).

**Bid Deadline:**

  (a) The deadline for submitting bids by an Overbidder shall be September 3, 2013 at 5:00 p.m. (Eastern Standard Time) (the "Bid Deadline").

  (b) Before the Bid Deadline, an Overbidder that desires to make a bid shall deliver written copies of its bid via overnight mail and email to: (i) the Debtor, 520 Chestnut Street, Blairsville, PA 15717, Attn: Frank Dlubak; and (ii) counsel for the

Debtor, The Law Office of Steven T. Shreve, 546 California Ave., Pittsburgh, PA 15202, Attn: Steven Shreve.

**Auction:**

(c) If no timely, conforming Qualified Bid from a Qualified Overbidder is received, the Debtor shall not conduct an Auction and shall request at the hearing to approve the Sale (the "Sale Hearing") that (i) the Bankruptcy Court approve the APA, including the Sale of the Assets (and the assignment of the Assumed Contracts, if any) to the Stalking Horse Bidder, and (ii) the Sale Order be immediately effective upon entry, notwithstanding the provisions of Rule 6004(h) of the Federal Rules of Bankruptcy Procedure;

(d) If one or more timely, conforming Qualified Bids from Qualified Overbidders are received, the Debtor shall conduct an auction of the Assets (the "Auction"), subject to Bankruptcy Court approval, in which the Stalking Horse Bidder and all other Qualified Overbidders may participate. The Auction shall be conducted at _____ on _____ ____, 2013 at _____ a.m. (Eastern Standard Time), or such other place and time as the Debtor may determine, so long as such change is communicated reasonably in advance to all Qualified Overbidders and other invitees, if any.

(e) The following procedures will govern the Auction:

(1) all Qualified Overbidders shall be deemed to have consented to the core jurisdiction of the Bankruptcy Court and to have waived any right to jury trial in connection with any disputes relating to the Auction or the Sale of the Assets;

(2) each bid by a Qualified Overbidder shall be automatically reduced by an amount equal to the Stalking Horse Bidder Fee;

(3) bidding will start at the amount of the highest bid submitted by a Qualified Overbidder, as determined by the Debtor, subject to approval by the Court;

(4) each subsequent bid shall be in increments of no less than $100,000;

(5) the Stalking Horse Bidder shall have the right, but not the obligation, in its sole and absolute discretion, to match bids made by any other Qualified Overbidder (and such bids shall be disclosed to the Stalking Horse Bidder promptly by the Debtor) and, in such event, the Stalking Horse Bidder's matching bid shall be deemed the highest and best bid for the Assets;

(6) immediately before concluding the Auction, the Debtor shall: (a) review each Qualified Bid for its financial and contractual terms and the factors relevant to the Sale process and the best interests of the Debtor's estate, its

creditors and other parties-in-interest therein; and (b) determine and identify the highest or otherwise best Qualified Bid (the "<u>Successful Bid</u>") and the Qualified Overbidder (or the Stalking Horse Bidder) submitting such bid (the "<u>Successful Bidder</u>");

(7) if, at the Auction's conclusion and consistent with the Bidding Procedures' terms, the Stalking Horse Bidder's final bid matches or is greater than the highest bid made by any Qualified Overbidder, such final bid shall be the Successful Bid, the Stalking Horse Bidder shall be the Successful Bidder and the Bankruptcy Court shall approve the APA, including the Sale of the Assets (including the assignment of the Assumed Contracts, if any) to the Stalking Horse Bidder, and authorize the Debtor to sell the Assets (including the assignment of the Assumed Contracts, if any) to the Stalking Horse Bidder, and the amount of the Stalking Horse Bidder's final bid shall constitute the Purchase Price under the APA; and

(8) the Debtor may, with Bankruptcy Court approval, elect to deem the Stalking Horse Bidder's final bid to be the Successful Bid, notwithstanding the receipt of an apparently higher bid from a Qualified Overbidder, if the Debtor reasonably concludes that the Qualified Overbidder may not be able to close on a timely basis, or for any other reason.

(f) The Stalking Horse Bidder has standing and is deemed to be a party in interest with standing to be heard on any motion, hearing or other matter related to the APA or any bid or other sale of Assets subject to the APA.

**Sale Hearing:**

(a) The Sale Hearing will take place on or before September 5, 2013]at _____ _.m. (Eastern Standard Time) in Courtroom D of the Honorable Jeffery A. Deller in the United States Bankruptcy Court for the Western District of Pennsylvania, U.S. Bankruptcy Court, 5414 U.S. Steel Tower, 600 Grant St., Pittsburgh, PA 15219, to consider approval of the Sale to the Successful Bidder or to approve the APA if no Auction is held or the Stalking Horse Bidder is the Successful Bidder.

**Return of Overbidder's Deposit:**

(a) Except as otherwise provided below with respect to any Successful Bidder, the Overbidder's Deposits of all Overbidders required to submit such a deposit under the Bidding Procedures shall be returned within three business days after the Auction concludes, or, if no Auction is held, within three days after the Sale Hearing.

(b) If any sale to a Successful Bidder other than the Stalking Horse Bidder fails to close on or before the Outside Date, such Overbidder's Deposit shall be forfeited to, and retained by, the Debtor and applied as follows: *first*, to the Stalking Horse Bidder to pay the Stalking Horse Bidder Fee as provided in the APA; and *second*, as directed by order of the Bankruptcy Court.

It is further ORDERED, ADJUDGED AND DECREED that in the event that (i) a competing offer is determined by the Debtor, subject to the Bankruptcy Court, to be the highest and best offer and the Sale to a competing bidder (i.e., not Buyer) closes, or (ii) the APA is terminated at no fault of Buyer, then Buyer shall be entitled to the Stalking-Horse Bidder Fee to reimburse Buyer's expenditure of fees, expenses and costs, and the time, effort and risk taken in connection with the proposed sale, and for serving as the stalking horse bidder. Notwithstanding (i) any Liens held by the Bank or any other party over the assets of the Debtor, or (ii) any agreement, or order approving any agreement, with the Bank or any other party related to use of cash collateral, post-petition financing or granting senior liens or priority administrative expense claims, the Debtor will pay the Stalking-Horse Bidder Fee to Buyer without further order of the Court, which shall be entitled to priority as a super-priority administrative expense claim under 11 U.S.C. § 364(c)(1), and paid at the time of Closing from funds received from the Successful Bidder. No Sale may close with any Successful Bidder (other than Buyer) unless the Stalking-Horse Bidder Fee is paid at the time of Closing from funds received from the Successful Bidder in accordance with this Order.

It is further ORDERED, ADJUDGED AND DECREED that the assumption and assignment procedures (the "Assumption and Assignment Procedures") are hereby APPROVED as follows:

(a)     Within five (5) days after entry of this Order, the Debtor shall file a schedule of the Debtor's Contracts that may be assumed and assigned to the Successful Bidder (hereinafter "Assigned Contracts") and the amount, if any, that the Debtor contends is the amount needed to pay to cure any and all defaults with respect to such contracts. The Debtor will also file a schedule of cure amounts (collectively the "Contracts and Cure Schedule"). Upon filing of the Contracts and Cure Schedule, a copy of the Contract and Cure Schedule will be served on each of the counterparties to the Assigned Contracts listed on the Contracts and Cure Schedule.

(b)     Any objections ("Assignment Objections") to the assumption and assignment of any contracts listed on the Contracts and Cure Schedule, including, but not limited to, objections relating to the adequate assurance of future performance or to the cure amount set forth in the

Contract and Cure Schedule must be filed with this Court and served upon the Notice Parties on the date by which objections to the Sale Motion must be filed (the "Assignment Objection Deadline"), which date will be prior to the Sale Hearing.

(c) Any counterparty failing to file an Assignment Objection by the Assignment Objection Deadline shall be forever barred from: (i) objecting to the Cure Amount set forth on the Contract and Cure Schedule with respect to its Assigned Contract; (ii) seeking additional amounts arising under its Assigned Contract prior to the Closing from the Debtor or the Successful Bidder; and (iii) objecting to the assumption and assignment of its Assigned Contract to the Successful Bidder(s).

(d) Any Assignment Objection not consensually resolved prior to the Sale Hearing shall be heard at the Sale Hearing with any related Cure Amounts or adequate assurance of future performance being fixed by this Court.

It is further ORDERED, ADJUDGED AND DECREED that the Sale Notice in substantially the form attached to the Motion as Exhibit B (the "Sale Notice") is hereby APPROVED, and no other or further notice shall be required if given as follows:

(a) The Debtor serves, within three (3) business days (the "Mailing Deadline") after entry of this Order, by first-class mail, postage prepaid, copies of this Order, the Motion and a notice of the Sale Notice upon: (i) the United States Trustee for this District, (ii) the Buyer, (iii) First Commonwealth; (iv) all parties that are known to have asserted a security interest, lien, or claim in the Assets, (v) all entities that may be parties to any of the Contracts, (vi) all applicable state and local taxing authorities and regulatory agencies, and (vii) all parties the Debtor has determined have demonstrated an interest in the Assets and financial capability sufficient to consummate a sale.

(b) On or before the Mailing Deadline, the Debtor will cause to be served by first-class mail, postage prepaid, this Order and the Sale Notice upon all other known creditors and equity security holders.

(c) On or before the Mailing Deadline, the Debtor will cause the Sale Notice to be published as required by W.PA.LBR 6004-1, notice of the proposed sale shall be advertised in the Pittsburgh Post-Gazette and in the Pittsburgh Legal Journal no less than fourteen days before the sale. The sale will also be advertised on the Court's website.

IT IS SO ORDERED, this _____ day of _____, 2013

By: _____

United States Bankruptcy Court