IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| DLUBAK CORPORATION, | ) | Bankruptcy Case No. |
| | ) | |
| Debtor. | ) | Chapter 11 |
| _____ | ) | |
| | ) | Doc. No. _____ |
| DLUBAK CORPORATION, | ) | |
| | ) | Related to Doc. No. 16 |
| Movant, | ) | |
| | ) | Hearing Date:  August 16, 2013 |
| v. | ) | Time:  10:00 a.m. |
| | ) | |
| FIRST COMMONWEALTH BANK, | ) | |
| FARMERS & MERCHANTS BANK OF | ) | |
| WESTERN PENNSYLVANIA, N.A., THE | ) | |
| HUNTINGTON NATIONAL BANK, | ) | |
| WELLS FARGO BANK, N.A., NISSAN | ) | |
| MOTOR ACCEPTANCE CORPORATION, | ) | |
| RYDER TRANSPORTATION SERVICES, | ) | |
| MOTOR TRUCK PACLEASE, OFFICE OF | ) | |
| THE UNITED STATES TRUSTEE, | ) | |
| | ) | |
| Respondents. | ) | |
| _____ | ) | |

**FIRST COMMONWEALTH BANK'S OBJECTIONS TO THE EXPEDITED
MOTION FOR OR AN ORDER APPROVING (A) BIDDING PROCEDURES
FOR THE SALE OF ASSETS OF THE DEBTOR; (B) STALKING-HORSE
BIDDER FEE RELATED TO THE SALE; (C) ASSUMPTION AND
<u>ASSIGNMENT PROCEDURES; AND (D) FORM AND MANNER OF SALE NOTICE</u>**

First Commonwealth Bank ("FCB") files its Objections to the Expedited Motion for an Order Approving (A) Bidding Procedures For the Sale of Assets of the Debtor, (B) Stalking-Horse Bidder Fee Related to the Sale, (C) Assumption and Assignment Procedures, and (D) Form and Manner of Sale Notice (the "Objection"), and in support hereof states as follows:

1. On August 7, 2013 (the "Petition Date"), the Debtor filed a chapter 11 petition pursuant to 11 U.S.C. §301, and has continued in the management and operation of its businesses and properties as a debtor-in-possession pursuant to 11 U.S.C. §§1107 and 1108.

2. No trustee or examiner has been appointed and no creditor's committee has been appointed in this case.

3. This Court has jurisdiction hereof pursuant to 28 U.S.C. §1334.

4. Venue is this judicial district pursuant to 28 U.S.C. §1409.

5. On August 9, 2013, the Debtor filed a Motion for Order (I) Approving the Sale of Assets; (II) Approving the Asset Purchase Agreement; and (III) Authorizing the Debtor to Assume and Assign Certain Executory Contracts (the "Sale Motion").

6. The Sale Motion proposes the sale of the Debtor's assets to Grey Mountain Partners Fund II, L.P. ("Buyer" or "Stalking-Horse Bidder").

7. On August 9, 2013, the Debtor filed an Expedited Motion for an Order Approving (A) Bidding Procedures For the Sale of Assets of the Debtor, (B) Stalking-Horse Bidder Fee Related to the Sale, (C) Assumption and Assignment Procedures, and (D) Form and Manner of Sale Notice ("Bid Procedures Motion").

## OBJECTIONS TO THE BIDDING PROCEDURES MOTION - PARTICIPATION REQUIREMENTS

8. Pursuant to the Bidding Procedures Motion, a potential bidder must submit "Current audited financial statements and latest unaudited financial statements of the potential bidder or, if the potential bidder is an entity formed for the purpose of acquiring the Assets, current audited financial statements and latest unaudited financial statements of the equity holders or sponsors of the potential bidder who will guarantee the obligations of the potential bidder, or such other form of financial disclosure and/or credit-quality support or enhancement, if any, that will allow the Debtor to make a reasonable determination as to the potential bidder's financial and other capabilities to consummate the Sale". *See Bidding Procedures Motion, p.6, Participation Requirements, Section (a)(ii).*

9.     FCB Bank objects this portion of the Bidding Procedures Motion as it imposes a heavy burden on any potential bidder to come forth with such documentation while it should only be necessary for a potential bidder to supply the Debtor with adequate information to show a wherewithal to close on the transaction.

10.    Moreover, the Stalking-Horse Bidder is not required to submit its current audited financial statements and latest unaudited financial statements to the Debtor; only potential bidders are required to provide this excessive information.

11.    A potential buyer may not have audited and/or unaudited financial statements and should not be excluded from the sale process due this requirement.

12.    FCB believes and avers that any potential bidder should only be required to provide documentation showing the wherewithal to close which may include proof of funds available, a letter of credit from a financial institution, a bank account statement showing adequate funds available and/or an affidavit or declaration that the potential bidder has the funds immediately available to pay the purchase price.

**OBJECTIONS TO THE BIDDING PROCEDURES MOTION - BID REQUIREMENTS**

13.    The Bidding Procedures Motion, the Sale Motion and the Asset Purchase Agreement (the "APA") attached to the Sale Motion contemplate a closing date of no later than September 6, 2013.

14.    Pursuant to the Bidding Procedures Motion, the proposed Bid Requirements require any Overbidder to submit a proposed asset purchase agreement that, *inter alia*, contains a proposed closing date that is not later than [September 6, 2013] (the "Outside Date").  *See Bidding Procedures Motion, p.7, Bid Requirements, Section (a)(i).*

15. The Sale Hearing is set for September 3, 2013 at 10:00 a.m. which is three days prior to the September 6, 2013 closing deadline.

16. Assuming there is no delay and the Sale Motion is approved on September 3, 2013, any order appealing the Sale Motion will not become a final and non-appealable order until 14 days after the entry of the order on the Sale Motion.

17. Accordingly, any closing on the sale must not take place until there is a final and non- appealable order on the Sale Motion.

## OBJECTIONS TO THE BIDDING PROCEDURES MOTION - BID DEADLINE

18. Pursuant to the Bidding Procedures Motion, the deadline for submitting bids by an Overbidder shall be September 3, 2013 at 5:00 p.m. (Eastern Standard Time). *See Bidding Procedures Motion, p.7, Bid Deadline, Section (a).*

19. A hearing on the Sale Motion is set to take place on September 3, 2013 at 10:00 a.m. (the "Sale Hearing")

20. Accordingly, the deadline for submitted bids by an Overbidder must be modified in light of the date of the Sale Hearing.

## OBJECTIONS TO THE BIDDING PROCEDURES MOTION - AUCTION

21. Pursuant to the Bidding Procedures Motion, "the Stalking-Horse Bidder shall have the right, but not the obligation, in its sole and absolute discretion, to match bids made by any other Qualified Overbidder (and such bids shall be disclosed to the Stalking-Horse Bidder promptly by the Debtor) and, in such event, the Stalking-Horse Bidder's matching bid shall be deemed the highest and best bid for the Assets". *See Bidding Procedures Motion, p.9, Auction, Section (v).*

22. The Bidding Procedures Motion further provides that "if, at the Auction's conclusion and consistent with the Bidding Procedures' terms, the Stalking-Horse Bidder's final bid matches or is greater than the highest bid made by any Qualified Overbidder, such final bid shall be the Successful Bid, the Stalking-Horse Bidder shall be the Successful Bidder and the Bankruptcy Court shall approve the APA, including the Sale of the Assets (including the assignment of the Assumed Contracts, if any) to the Stalking-Horse Bidder, and authorize the Debtor to sell the Assets (including the assignment of the Assumed Contracts, if any) to the Stalking-Horse Bidder, and the amount of the Stalking-Horse Bidder's final bid shall constitute the Purchase Price under the APA". *See Bidding Procedures Motion, p.9, Auction, Section (vii).*

23. FCB objects to the provisions set forth in the Auction Sections (v) and (vii) of the Bidding Procedures Motion as such provision may have a chilling effect on bidding by other potential purchases if the Stalking-Horse Bidder may match any bids and be deemed the highest bidder without having to abide by the bidding procedures set forth in the proposed bidding procedures order which requires a potential bidder to bid in $100,000.00 increments.

24. The Stalking-Horse Bidder should be required to follow the bid procedures and bid in $100,000 increments as is required by all other potential overbidders at a proposed auction.

**OBJECTIONS TO THE BIDDING PROCEDURES MOTION - RETURN OF OVERBIDDER'S DEPOSIT**

25. Pursuant to the Bidding Procedures Motion, "If any sale to a Successful Bidder other than the Stalking-Horse Bidder fails to close on or before the Outside Date, such Overbidder's Deposit shall be forfeited to, and retained by, the Debtor and applied as follows: first, to the Stalking-Horse Bidder to pay the Stalking-Horse Bidder Fee as provided in the APA;

and second, as directed by order of the Bankruptcy Court". *See Bidding Procedures Motion, p.10, Return of Overbidder's Deposit, Section (B).*

26. FCB objects to this provision of the Bidding Procedures Motion as any Overbidder's Deposit shall become property of the Debtor's estate and subject to FCB's cash collateral liens and replacement liens.

27. Moreover, in the event the Overbidder fails to close on or before the Outside Date, the Stalking-Horse Bidder, or any other secondary bidder, should have the opportunity to purchase the Debtor's assets for the amount of its final bid at the time of the Sale Hearing.

28. In the event that the Overbidder fails to close on or before the Outside Date and the Stalking-Horse Bidder, or any other secondary bidder, fails to subsequently consummate a sale of the assets with the Debtor, the Stalking-Horse Bidder shall be entitled to a superpriority administrative claim for its Stalking-Horse Bidder Fee, junior only to the superpriority claims of FCB which shall have priority of the kind specified in §507(b) of the Bankruptcy Code over any and all administrative expenses specified in §507(a)(1) of the Bankruptcy Code.

### **OBJECTIONS TO THE BIDDING PROCEDURES MOTION - STALKING-HORSE BIDDER FEE RELATED TO THE SALE**

29. The Bidding Procedures Motion provides, in relevant part, that the Stalking-Horse Bidder Fee shall be entitled to priority as a superpriority administrative expense and paid at the time of Closing, without further order of the Court, from funds received from the Successful Bidder, in the event the Buyer is not the Successful Bidder.

30. FCB does not object to the payment of the Stalking-Bidder Fee to the Buyer from any sale proceeds paid at the time of the closing.

31. In the event that a proposed sale does not close, for any reason, the Buyer shall be entitled to a superpriority administrative claim in the amount of $200,000.00 for the Stalking-

Horse Bidder Fee, however the superpriority administrative expense claim for the Stalking-Horse Bidder Fee shall be junior to the superpriority claims of FCB.

WHEREFORE, First Commonwealth Bank prays that the Court enter a modified Order consistent with the objections set forth in the First Commonwealth Bank's Objections to the Expedited Motion for an Order Approving (A) Bidding Procedures For the Sale of Assets of the Debtor, (B) Stalking- Horse Bidder Fee Related to the Sale, (C) Assumption and Assignment Procedures, and (D) Form and Manner of Sale Notice and grant First Commonwealth Bank such other and further relief as this Court deems just.

Dated: <u>August 15, 2013</u>                             Respectfully Submitted,

           COUNSEL FOR FIRST
           COMMONWEALTH BANK:

           TUCKER ARENSBERG, P.C.

           <u>*/s/ Jillian Nolan Snider*</u>
           Brett A. Solomon, Esquire
           Pa. Id. 34545
           Jillian Nolan Snider, Esquire
           Pa. Id. 202253
           1500 One PPG Place
           Pittsburgh, PA  15222
           (412) 566-1212
           Fax: (412) 594-5619