IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: <br><br> DLUBAK CORP., <br><br> Debtor. | Bankruptcy No. 13-70582-JAD <br><br> Chapter 11 |
| DLUBAK CORP., <br><br> Movant, <br><br> v. <br><br> FIRST COMMONWEALTH BANK; FARMERS & MERCHANTS BANK OF WESTERN PENNSYLVANIA; THE HUNTINGTON NATIONAL BANK; WELLS FARGO BANK, N.A.; NISSAN MOTOR ACCEPTANCE CORP.; RYDER TRANSPORTATION SERVICES; MOTOR TRUCK PACLEASE; OFFICE OF THE UNITED STATES TRUSTEE; <br><br> Respondents. | Related to Doc. No. 16 <br><br> **Hearing Date:** <br> **Hearing Time:** <br><br> **Response Date:** |

## ORDER APPROVING (A) BIDDING PROCEDURES FOR THE SALE OF ASSETS OF THE DEBTOR; (B) BREAK-UP FEE RELATED TO THE SALE; AND (C) ASSUMPTION AND ASSIGNMENT PROCEDURES.

Upon consideration of the Debtor's Motion for an Order Approving (A) Bidding Procedures For the Sale of Assets of the Debtor, (B) Stalking-Horse Bidder Fee Related to the Sale, (C) Assumption and Assignment Procedures, and (D) Form and Manner of Sale Notice (the "Motion"), after considering objections to the Motion, and after notice, argument and hearing, upon the consent of the Debtor, Farmer's & Merchants Bank of Western Pennsylvania; potential Bidder Oran Safety Glass; GGI Glass Distributors Corp., d/b/a General Glass International (the "Stalking Horse Bidder"); Frank Dlubak, principal of the Debtor; [First Commonwealth Bank consenting to this Order but reserving its rights, the Office of the U. S. Trustee has no objection

013167\0002\10610880.2

to this Order being entered by does not consent, and potential Bidder Grey Mountain Partners Fund II, L.P. does not consent], the Court finds that the Debtor has effectuated proper service of the Motion and that such notice of the Motion is sufficient under the circumstances and applicable Federal Rules of Bankruptcy Procedures and Local Rules of Bankruptcy Procedures; providing a reasonable opportunity to object and to be heard. It is hereby ORDERED, ADJUDGED AND DECREED that the Bidding Procedures are hereby approved as follows:

1. The Debtor shall hold an auction sale in open Bankruptcy Court to sell substantially all non-real estate assets of the Debtor on September 23, 2013 at 10:00 a.m. Eastern (the "Auction"); *and the Debtor consummates a sale with the successful bidder*

2. The Stalking Horse Bidder, GGI Glass Distributors Corp., d/b/a General Glass International, shall be entitled to a break-up fee in the amount of $60,000 in the event such party is outbid at such Auction. The Stalking Horse Bidder, if outbid, shall have the right to file a Section 503(b) administrative expense application if appropriate; however, any amount claimed as an administrative expense shall be reduced by the $60,000 break-up fee;

3. The bidding increment at the Auction referred to in Section 1 shall be determined by the Court at the time of the sale;

4. The minimum next bid after the opening bid of the Stalking Horse Bidder at the Auction shall be at least the amount of the opening bid plus $75,000. Bids of third parties shall not be reduced by the amount of the break-up fee, and bidders are not entitled to simply match the amount of a current bid;

5. Prospective bidders shall provide evidence of financial ability to consummate the purchase to the Debtor as a condition of being a bidder at the Auction;

6. <u>Participation Requirements</u>.

   (a) In order to be qualified to receive any confidential information from the Debtor, to submit a bid and to participate in the Auction, a potential bidder must submit each of the following to the Debtor on a timely basis:

   (i) An executed confidentiality agreement which shall inure to the benefit of the Successful Bidder, in a form and substance acceptable to the Debtor; and

   (ii) Financial disclosure and/or credit-quality information that will allow the Debtor to make a reasonable determination as to the potential bidder's financial ability to consummate the Sale.

7. <u>Bid Requirements</u>.

   (a) To participate at the Auction, in addition to Section 4 above, an interested bidder must submit the following to the Debtor at least 48 hours prior to the scheduled Auction:

   (i) a proposed asset purchase agreement (the "Competing APA"), executed by the bidder, along with a red-lined copy comparing the Competing APA to the APA between the Stalking Horse and the Debtor (the Debtor shall promptly share the red-lined comparison with the Stalking Horse and any other party that has submitted a valid overbid), that: (a) contains terms and conditions that are acceptable to the Debtor; (b) provides for a purchase price to be paid to the Debtor that exceeds the initial bid of $2,200,000 by at least Seventy-five Thousand Dollars ($75,000); (c) disclaims any right of Overbidder to receive a fee analogous to the Stalking-Horse Bidder Fee, any transaction or breakup fee, expense reimbursement or similar fee, or payment or compensation under Bankruptcy Code Section 503(b) for making a substantial contribution; (d) is not subject to or contingent upon the obtaining of financing; and (e) contains a proposed closing date that is acceptable to the Debtor; and

   (ii) provide deposit funds to bidder's counsel's trust account or to an escrow agent designated by the Debtor or cashier's check made payable to the order of the Debtor in the amount of $100,000 as a good faith deposit for application against the purchase price at the closing of the transaction if the bidder is the successful bidder, or returned to the bidder if the bidder is not the successful bidder at Auction;

   (iii) in the event the Overbidder fails to close on the sale, the Stalking Horse Bidder, or any other secondary bidder, should have the opportunity to purchase the Debtor's non-real estate assets for the amount of its final bid at the time of the sale hearing;

(iv) in the event that the Overbidder fails to close on the sale and the Stalking Horse Bidder, or any other secondary bidder, fails to subsequently consummate a sale of the assets with the Debtor, the Stalking Horse Bidder shall be entitled to a superpriority administrative claim for its Stalking Horse Bidder fee, junior only to the superpriority claims of First Commonwealth Bank, which shall have priority of the kind specified in Section 507(b) of the Bankruptcy Code over any and all administrative expenses specified in Section 507(a)(1) of the Bankruptcy Code except any unpaid and undisputed quarterly U.S. Trustee fee,

(b) Each bidder shall be deemed to acknowledge and represent that it has had an opportunity to conduct any and all due diligence regarding the Debtor and the Assets prior to making any bids; that it has relied solely upon its own independent review, investigation and/or inspection of the Assets in making its bid; and that it did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Debtor and the Assets, or the completeness of any information provided in connection therewith, except as expressly stated in these Bidding Procedures or, as to the Successful Bidder, the Competing APA with such Successful Bidder.

(c) Any entity that submits a Qualified Bid accompanied by all items required to be submitted along therewith in accordance with these Bidding Procedures shall each be deemed a "Qualified Bidder" and may bid for the Assets at the Auction.

(d) The following procedures will govern the Auction:

(1) all Qualified Bidders shall be deemed to have consented to the core jurisdiction of the Bankruptcy Court and to have waived any right to jury trial in connection with any disputes relating to the Auction or the Sale of the Assets;

(2) bidding will start at the amount of the highest bid submitted by a Stalking Horser Bidder, as determined by the Debtor, subject to approval by the Court;

(3) prior to the commencement of bidding at the Auction, every bidder shall identify such bidder's valuation of the Debtor's inventory value and accounts receivable values as of the date of the auction. This information shall be utilized by the Debtor to determine the highest and best offer at Auction.

8. <u>Allocation.</u> Not less than three days prior to the deadline for objecting to the Motion for Order (I) Approving the Sale of Assets; (II) Approving the Asset Purchase Agreement; and (III) Authorizing the Debtor to Assume and Assign Certain Executory Contracts, an allocation of the initial bid shall be supplied to creditors holding security

interests and liens in and to the assets to be sold pursuant to the Asset Purchase Agreement. Overbids shall be allocated on a pro rata basis.

It is further ORDERED, ADJUDGED AND DECREED that the assumption and assignment procedures (the "Assumption and Assignment Procedures") are hereby APPROVED as follows:

(a)   Within seven (7) days after entry of this Order, the Debtor shall file a schedule of the Debtor's Contracts that may be assumed and assigned to the Successful Bidder (hereinafter "Assigned Contracts") and the amount, if any, that the Debtor contends is the amount needed to pay to cure any and all defaults with respect to such contracts. The Debtor will also file a schedule of cure amounts (collectively the "Contracts and Cure Schedule"). Upon filing of the Contracts and Cure Schedule, a copy of the Contract and Cure Schedule will be served on each of the counterparties to the Assigned Contracts listed on the Contracts and Cure Schedule.

(b)   Any objections ("Assignment Objections") to the assumption and assignment of any contracts listed on the Contracts and Cure Schedule, including, but not limited to, objections relating to the adequate assurance of future performance or to the cure amount set forth in the Contract and Cure Schedule must be filed with this Court and served upon the Notice Parties on the date by which objections to the Sale Motion must be filed (the "Assignment Objection Deadline"), which date will be prior to the Sale Hearing.

(c)   Any counterparty failing to file an Assignment Objection by the Assignment Objection Deadline shall be forever barred from: (i) objecting to the Cure Amount set forth on the Contract and Cure Schedule with respect to its Assigned Contract; (ii) seeking additional amounts arising under its Assigned Contract prior to the Closing from the Debtor or the Successful Bidder; and (iii) objecting to the assumption and assignment of its Assigned Contract to the Successful Bidder(s).

(d)   Any Assignment Objection not consensually resolved prior to the Sale Hearing shall be heard at the Sale Hearing with any related Cure Amounts or adequate assurance of future performance being fixed by this Court.

IT IS SO ORDERED, this 23rd day of August, 2013

By: _____
United States Bankruptcy Court